# In the United States District Court
# for the District of Kansas

**United States of America**,
                Plaintiff,

v.                                                            Case No. 24-10077-01 JWB

**Martin Brandon Gillen,**
                Defendant.

## Sentencing Memorandum

Branden Gillen asks the Court to sentence him to a term of less than 470 months and recommend that he be designated to USP Tucson. We proceed in four parts.

1. **Life sentences and de facto life sentences are rare.**

Life sentences, or their functional equivalent, are exceedingly uncommon in federal court. Federal district courts "rarely impose life imprisonment sentences or de facto life sentences of at least 470 months. Just 0.4 percent of offenders sentenced during the six-year period examined in this report received life imprisonment or de facto life sentences." United States Sentencing Commission, *Life Sentences in the Federal System*, p. 31 (July 2022) (page citations refer to .pdf page number). And in almost half that number of cases (43.8%), the statutory mandatory minimum was life in prison. *Id*. at 20. So, district courts very rarely exercise their discretion to impose a life or de facto life sentence.

There are two obvious commonalities among cases in which a judge imposes a life sentence. First, those "receiving life imprisonment or de facto life sentences often had long criminal careers, with some starting as juveniles and spanning decades." *Id*. at 31. Offenders "with criminal history who received life imprisonment had a median of

five previous criminal convictions compared to a median of four previous criminal convictions[.]" *Id.* at 18. And those who were sentenced to life "tended to have criminal histories that included more serious crimes." *Id.* at 19. "64.2 percent of offenders who received life imprisonment and had a prior criminal history committed at least one prior violent offense, with a median of two such prior violent offenses." *Id.*

Second, the vast majority of those who received a life sentence went to trial. The typical trial rate is 2.3%. Those who receive a life sentence went to trial 75.6% of the time, a rate 30 times higher. *Id.* at 21.



Mr. Gillen doesn't neatly fit into either category. He doesn't have any scorable criminal history. He went to trial, sort of, pleading guilty on the second day. Notably, Mr. Gillen's decision spared both victims from being called to the stand and occurred before the government introduced any evidence of child pornography. We're certainly not advocating for acceptance credit, but Mr. Gillen's case stands on a much different footing than one in which the victims submitted to cross-examination and the jury had to view child pornography.

2. **Sentences imposed in kidnapping cases and production cases.**

The Sentencing Commission's Judiciary Sentencing Information database discloses that between 2019 and 2023, when: (1) USSG § 2A4.1 is the primary guideline, (2) the final offense level was 43, and (3) the criminal history category was I, downward variances were the rule, not the exception.



Only 20% of sentences were within the guideline range. The average sentence imposed was 308 months.



Kidnapping, of course, is not Mr. Gillen's only offense of conviction. But repeating the same data search using USSG § 2G2.1 as the primary guideline still discloses that downward variances are common.



And average sentences are still less than 30 years.



Remember that these are the sentences imposed on kidnapping defendants and production defendants who are in the same place as Mr. Gillen on the sentencing guidelines; total offense level 43, criminal history category I. All of these defendants had life as their guideline range.

We acknowledge that the data doesn't tell the Court everything it needs to know to sentence Mr. Gillen. But that judges across the country are imposing a sentence within the guideline range less than a quarter of the time and, on the average, imposing 25 years in kidnapping cases and 30 years in production cases counsels against a life sentence or the functional equivalent.

3.  **The offense conduct**.

C.J. maintains that she went with Mr. Gillen only because he "manipulated and threatened to hurt my friends if I did not do your unthinkable fantasies. I can never forgive myself for going along with it because I had no other choice." (Doc. 56, ¶ 56). If that were true, it would weigh heavily in aggravation. But it is not.

Doubtless, Mr. Gillen said some vile things to C.J. But at the time contemporaneous to these events, C.J. described her relationship with Mr. Gillen in glowing terms. (Ex. 854, 886, 911, 916).











C.J. was hardly reticent to go with Mr. Gillen. Rather, she castigated him for not picking her up earlier. (Ex. 846, 848, 849).





Before he left for Illinois, Mr. Gillen clarified with C.J. that she still wanted him to come. (Ex. 831)



That same day, she expressed her excitement about Mr. Gillen picking her up and clarified that this was her choice. (Ex. 824, 826).





As Mr. Gillen drove to Illinois, she again expressed her excitement. (Ex. 830).



C.J. explained that a central reason she wanted to go with Mr. Gillen was her troubled relationship with her mother. (Ex. 859, 869, 880).





From: 16186910434@s.whatsapp.net Belle
I hate Donna so much I want to kill her
Status: Read
Platform: Mobile

3/10/2024 3:10:50 PM(UTC+0)

Source Info:
00008120-
000C586C3E93C01E_files_full.zip/private/var/mobile/Containers/Shared/AppGroup/68B06BA5-2D87-4B5F-8188-FA2F089DB46B/ChatStorage.sqlite : 0x4C2172 (Table: ZWAMESSAGE; Size: 6651904 bytes)
00008120-
000C586C3E93C01E_files_full.zip/private/var/mobile/Containers/Shared/AppGroup/68B06BA5-2D87-4B5F-8188-FA2F089DB46B/ContactsV2.sqlite : 0x1515A (Table: ZWAADDRESSBOOKCONTACT; Size: 208896 bytes)

From: 16186910434@s.whatsapp.net Belle
She just pisses me off so much
Status: Read
Platform: Mobile

3/10/2024 3:11:02 PM(UTC+0)

Source Info:
00008120-
000C586C3E93C01E_files_full.zip/private/var/mobile/Containers/Shared/AppGroup/68B06BA5-2D87-4B5F-8188-FA2F089DB46B/ChatStorage.sqlite : 0x4C23E1 (Table: ZWAMESSAGE; Size: 6651904 bytes)
00008120-
000C586C3E93C01E_files_full.zip/private/var/mobile/Containers/Shared/AppGroup/68B06BA5-2D87-4B5F-8188-FA2F089DB46B/ContactsV2.sqlite : 0x1515A (Table: ZWAADDRESSBOOKCONTACT; Size: 208896 bytes)

From: 16186910434@s.whatsapp.net Belle
03/13/24

I have left.

This is Belle, I'm 20 years old. I can make my own decisions in life. And I'm choosing to leave. You can try all you want but it won't bring me back. You wanted me out of the house sooner or later. Well, here we are.

Here is a message for Donna and Ricky individually.

Donna, thanks for being a hypocrite, and narcissistic, bully.
You have put me down my entire life. You're The reason I have low self-esteem. I can't believe I had you as a parent. Now that the house is empty I hope you'll learn to be proud of your children for what they are not what You want them to be. Religion is a cult. You're living a lie.

Ricky, thanks for being a hardworking Dad. You did your best and that's what counts. Not every parent can be perfect. We had some nice memories when I was young. But as you grow up you grow apart from your parents. And that's life.

Christabelle Jankowski

Status: Read
Platform: Mobile

3/11/2024 6:41:16 AM(UTC+0)

Source Info:
00008120-000C586C3E93C01E_files_full.zip/private/var/mobile/Containers/Shared/AppGroup/68B06BA5-2D87-4B5F-8188-FA2F089DB46B/ChatStorage.sqlite : 0x5057D2 (Table: ZWAMESSAGE; Size: 6651904 bytes)
00008120-000C586C3E93C01E_files_full.zip/private/var/mobile/Containers/Shared/AppGroup/68B06BA5-2D87-4B5F-8188-FA2F089DB46B/ContactsV2.sqlite : 0x1515A (Table: ZWAADDRESSBOOKCONTACT; Size: 208896 bytes)

In sum, C.J.'s decision to go with Mr. Gillen was not the product of threats. As she said at the time, it was a choice she made, in large part to escape her mother's influence.

### 4. Recommendation.

We anticipate that Mr. Gillen will be housed in a high-security facility. He requests that the Court recommend placement at USP Tucson because that facility has a sex offender treatment program and is the only high security facility that does. The Federal Bureau of Prisons "recognizes sex offenders as a vulnerable population within a prison setting. Institutional assignment, unit management, Psychology Treatment Programs, and re-entry planning promote the well-being of sex offenders while incarcerated and help both the offenders and society by reducing the likelihood of re-offence [sic] after release." https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp. Certain BOP institutions offer sex offender treatment, and those institutions "often have a higher proportion of sex offenders in their offender population. This higher concentration of sex offenders within an institution helps offenders feel more comfortable acknowledging their concerns and seeking treatment." *Id*. To facilitate treatment and protect Mr. Gillen's safety, we ask the Court to recommend USP Tucson.

Respectfully submitted,

s/ Quentin C. Aker
Quentin C. Aker, #28646
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202

>Telephone: (316) 269-6445
>Fax: (316) 269-6175
>E-mail: Quentin_Aker@fd.org
>
>s/Kirk C. Redmond
>Kirk C. Redmond, #18914
>First Assistant Federal Public Defender
>632 SW Van Buren ST, Ste 200
>Topeka, Kansas 66603
>Phone: (785) 232-9828
>Fax: (785) 232-9886
>Email: kirk_redmond@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all interested parties.

>s/ Quentin C. Aker
>Quentin C. Aker, #28646
>
>s/Kirk C. Redmond
>Kirk C. Redmond, #18914